### 9794

### ROGERS v. MARION COUNTY LUMBER COMPANY.

#### (93 S. E. 1055.)

Logs and Logging—Sales of Timber—Nature of Contract—Reasonable Time—Option for Extension—Cloud on Title.—Decision in *Gray v. Marion County Lumber Co.*, 102 S. C. 289, 86 S. E. 640, followed.

Before DeVore, J., Bennettsville, December, 1916. Affirmed.

Action by J. E. Rogers against Marion County Lumber Company. The defendant appeals from the Circuit decree, which was as follows:

Decree. On June 30th, 1898, J. E. Napier conveyed to Cape Fear Lumber Company for the consideration of one hundred and thirty dollars ($130.00) all the timber measuring fourteen inches and up on a tract of land containing one hundred and two and one-half (102½) acres, more or less, situate in Marlboro county, except a very small portion thereof which is situate in Dillon county.    The deed contains the following clause:

"The said Cape Fear Lumber Company to have ten years from the time they commence to cut the timber to cut and remove said timber, and if at the end of that time they have not removed said timber, then by the payment of six per cent. upon the purchase price they can have ten years longer time to remove same."

In 1904 Cape Fear Lumber Company conveyed this timber to Marion County Lumber Company, and in 1913

Marion County Lumber Company conveyed to the defendant. In 1905 J. E. Napier conveyed to the plaintiff herein fifty-three (53) acres, more or less, of the tract covered by the above mentioned timber deed. The remainder of the tract is now owned in fee simple by the defendant under a purchase made in 1913.

No timber was ever cut or removed from the said tract of land by the defendant or either of its predecessors prior to the commencement of this action. This action was commenced on April 23d, 1914, and shortly after that time defendant cut a few crossties on the land, and thereupon plaintiff procured an interlocutory injunction.

The complaint alleges, among other things, that it was incumbent upon Cape Fear Lumber Company, its successors and assigns, to begin the cutting and removal of this timber within a reasonable time after the date of the deed; that a reasonable time had elapsed and expired, and that defendant has no interest in the timber, but that its claim thereto is a cloud on plaintiff's title, preventing him from a complete enjoyment of his rights in the land in question. He demands that the cloud be removed and that it be adjudged that the defendant has no right, title or interest in the timber on that portion of the land covered by the said timber deed which was conveyed to plaintiff. The cause was heard before me on the 15th day of December, 1916, in open Court at Bennettsville, South Carolina, upon the testimony of the plaintiff taken before T. C. Hamer, Esquire, referee, and upon the testimony of J. L. Camp in behalf of the defendant.

The law in a case of this kind appears to have been settled by the Supreme Court in the cases of *Minshew v. Lumber Corporation,* 98 S. C. 8, 81 S. E. 1027, and *Gray v. Marion County Lumber Company,* 102 S. C. 289, 86 S. E. 640. It was the duty of the Cape Fear Lumber Company and its successors to commence to cut and remove this timber within a reasonable time, and what would be a reasonable time must be determined by the facts and circumstances surrounding

the parties at the time the contract was made, in so far as such facts and circumstances were known to both parties.

It appears from the evidence that Messrs. Mitchell and Kellum represented the Cape Fear Lumber Company in the transaction in question. It is admitted that Mr. J. E. Napier and Mr. Kellum are dead, and Mr. Mitchell did not testify in the case. In this respect the case is very similar to the Gray case where the original grantor did not testify. Plaintiff testified, however, that he resided in the neighborhood of this tract of land at the time the deed was made; that he knew Mitchell and Kellum; that they came into that community in 1898, and that they gave him to understand that they would cut the timber they were buying in that neighborhood "right away." It also appears from the testimony that Cape Fear Lumber Company was at that time engaged in the manufacture of lumber at Wilmington, North Carolina, and that about the time this timber was purchased this company also purchased considerable timber in Columbus county, North Carolina, Horry, Marion and Marlboro counties, South Carolina. It is reasonable to infer that the Cape Fear Lumber Company was thoroughly familiar with the lumber business, for it was engaged in the manufacture of lumber at and before these purchases were made. There is no evidence that Napier or the plaintiff had any familiarity whatever with the lumber business, or the conditions surrounding the business of the Cape Fear Lumber Company, beyond the fact that the company had a mill at Wilmington.

It appears from the evidence offered in behalf of defendant that about 1902, which must have been approximately four years after the execution of the deed in question, Cape Fear Lumber Company undertook to log timber from Columbus county, North Carolina, and Horry county, South Carolina, to its mill in Wilmington, but that this plan proved "bad business," that Marion County Lumber Company was formed in the late summer or early fall of 1904, and this

company took over the holdings in Marion and Marlboro counties, South Carolina; that this company commenced the construction of a large plant at Marion in 1905, and the same was completed in the summer of 1906, and that this company then commenced to construct its railroad and to cut its timber in Marion and Marlboro counties.

The foregoing statement of facts does not appear to show due diligence on the part of the defendant or its predecessors. There is no reason whatever to assume that it was the contemplation of the parties that Cape Fear Lumber Company would first experiment to see whether timber bought in Columbus county, North Carolina, and Horry county, South Carolina, could be profitably logged to its mill at Wilmington. But even if we assume this to be the case, the testimony in behalf of the defendant shows that the experiment was not made until approximately four years after the execution of the deed in question. It further appears from the testimony of defendant that the construction of a mill at Marion was not commenced until seven years after the deed was made. It surely could not have been in the contemplation of the parties that such a period of time should elapse before a mill for the cutting of this timber was erected. It further appears from the testimony of the defendant that the mill was built at the southeastern edge of the timber holdings.

The salient features of the case are practically the same as those of the Minshew and Gray cases, particularly the latter, so far as the facts are concerned. The deed in the Gray case was practically the same in its terms as that in the case at bar. I am unable to resist the conclusion that at the time this suit was brought more than a reasonable time had elapsed for the commencement of the cutting and removal of the timber in question; and I so find. And I, therefore, find that the defendant has no rights under the deed so far as the tract of land owned by plaintiff is concerned.

17—108.

It is, therefore, ordered, adjudged and decreed, that the defendant has no right, title or interest in or to the timber upon the tract of land owned by plaintiff described in the complaint, and its rights therein expired by lapse of time prior to the commencement of the cutting and removal thereof; and that the defendant and all others claiming under or through it be, and they are hereby, barred from in any way interfering with the land herein involved, or the timber thereon.

The exceptions were as follows:

1. Because his Honor erred, it is respectfully submitted, in declaring a forfeiture by holding that there was no substantial difference upon the facts in the case under consideration and the Minshew and Gray cases.

(a) In that it appeared from the testimony in the Minshew case that R. L. Montague had no mill and no plans for the cutting of timber purchased from Wall; whereas, in the case at bar, Cape Fear Lumber Company had a mill at Wilmington, N. C., one hundred miles distance.

(b) In that in the Minshew case, the successors in title of Montague went to a distant point with several large rivers intervening to build its mill; whereas, in the case at bar, the successors in title of Cape Fear Lumber Company came approximately near to the timber to build its mill.

(c) In that the successors in title of Montague cut in a desultory way without any well defined plan for reaching the timber in controversy; whereas, in the case at bar the successors in title of Cape Fear Lumber Company systematically went forward to cut the timber in controversy and used every reasonable means to reach it.

(d) In that in the Minshew case contracts to adjacent lands were introduced to show that Montague and his associates had contracts of lands in the same neighborhood providing ten years from the date of the deed for the cutting; whereas, in the case at bar the defendant introduced a con-

tract to adjacent land showing ten years from the date of the deed for the cutting with a ten year extension and another contract from the plaintiff himself providing for twenty years from the date of the deed for the cutting.

(e) In that in both the Minshew and the Gray cases, it appeared that the lands involved were capable of cultivation and that the leaving of the timber thereon imposed an extraordinary burden on the freehold; whereas, in the case at bar, it is conceded that there is a low, flat swamp through the premises which subjects the lands to overflow.

*Messrs. E. P. Buford* and *Malcolm M. Woods,* for appellant, cite: *As to reasonable time:* 25 Cyc. 1553; 102 S. C. 289; 90 S. C. 153; 98 S. C. 21.

*Mr. L. D. Lide,* for respondent.

August 16, 1917.

The opinion of the Court was delivered by MR. JUSTICE HYDRICK.

Careful examination of the record in this case fails to disclose any ground, either of law or of fact, upon which it can be distinguished from the case of *Gray v. Marion County Lumber Company,* 102 S. C. 289, 86 S. E. 640, upon the authority of which the judgment of the Circuit Court is affirmed.